**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE MARAGOS, in his official capacity as the COMPTROLLER OF THE COUNTY OF NASSAU, acting on behalf of the COUNTY OF NASSAU, | No. _____ |
| Plaintiff, | Removed from the Supreme Court of the State of New York, Nassau County, Index No. 12/014496 |
| -against- | |
| BANK OF AMERICA CORPORATION; BANK OF AMERICA, N.A.; BANK OF TOKYO MITSUBISHI UFJ LTD.; BARCLAYS BANK PLC; CITIGROUP, INC.; CITIBANK, N.A.; COÖPERATIEVE CENTRALE RAIFFEISEN – BOERENLEENBANK B.A.; CREDIT SUISSE GROUP AG; DEUTSCHE BANK AG; HSBC HOLDINGS PLC; HSBC BANK PLC; JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; LLOYDS BANKING GROUP PLC; HBOS PLC; ROYAL BANK OF CANADA; THE NORINCHUKIN BANK; THE ROYAL BANK OF SCOTLAND GROUP PLC; UBS AG; WESTLB AG; and WESTDEUTSCHE IMMOBILIENBANK AG, | **NOTICE OF REMOVAL** |
| LIBOR Defendants, | |
| -and- | |
| GOLDMAN SACHS MITSUI MARINE DERIVATIVE PRODUCTS, L.P., UBS AG, and MORGAN STANLEY CAPITAL SERVICES INC., | |
| Counterparty Defendants, | |
| -and- | |
| NASSAU COUNTY INTERIM FINANCE AUTHORITY, | |
| Nominal Defendant, | |

TO:   THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE THAT, for the reasons stated below, the undersigned defendants Bank of America Corporation and Bank of America, N.A. (together, "Bank of America"), Citigroup, Inc. and Citibank, N.A. (together, "Citi"), JPMorgan Chase & Co. and JPMorgan Chase Bank, National Association (together, "JPMorgan Chase"), and WestLB AG, now known as Portigon AG ("WestLB" and "Portigon" respectively), hereby remove the above-captioned action (the "Action") from the Supreme Court of the State of New York, Nassau County, to the United States District Court for the Eastern District of New York.

This removal arises under the Edge Act, 12 U.S.C. §§ 611 *et seq.* and 28 U.S.C. §§ 1330, 1331, 1441(a), and 1441(d). As grounds for removal, the undersigned Defendants state as follows:

### SUMMARY

1.     Defendants may properly remove an action from state court pursuant to 28 U.S.C. § 1441(a) if the federal district court has original jurisdiction over the action. This Court has original jurisdiction over this matter pursuant to the Edge Act, 12 U.S.C. §§ 611 *et seq.*, because at least one party is a corporation organized under the laws of the United States, and Plaintiff's claims "aris[e] out of transactions involving international or foreign banking, … or out of other international or foreign financial operations …." 12 U.S.C. § 632.

2.     Defendants may also properly remove an action from state court pursuant to 28 U.S.C. § 1441(d) ("Section 1441(d)") if the suit is against a corporation that is majority-owned by a foreign state, as stated in 28 U.S.C. § 1603(a) ("Section 1603(a)"). This Court has original jurisdiction over this matter because at least one defendant is majority-owned by a foreign state and is therefore entitled to remove this action under Section 1441(d).

2

## PROCEDURAL HISTORY AND BACKGROUND

3.      On or about November 27, 2012, Plaintiff George Maragos, in his official capacity as the Comptroller of the County of Nassau, filed a Summons and Complaint entitled *Maragos v. Bank of America Corp. et al.*, Index No. 12/014496, in the Supreme Court of the State of New York, County of Nassau (the "State Court").  On or about December 6, 2012 and thereafter, Plaintiff purported to serve the Summons and Complaint on certain Defendants. Copies of Plaintiff's process and pleading are attached hereto as Exhibit A.

4.      In the Complaint, Plaintiff alleges that the Nassau County Interim Finance Authority ("NIFA," which is described as a Nominal Defendant) entered into nine interest rate swap transactions (the "Transactions"), including four Transactions with Defendant Goldman Sachs Mitsui Marine Derivative Products, L.P. ("Goldman Sachs"), four Transactions with Defendant UBS AG ("UBS"), and one Transaction with Defendant Morgan Stanley Capital Services Inc. ("Morgan Stanley").  (Compl. ¶¶ 61-63, 67-75.)  The Complaint refers to Goldman Sachs, UBS, and Morgan Stanley, as the "Counterparty Defendants."

5.      Plaintiff alleges that in each Transaction, NIFA was entitled to receive variable interest rate payments tied to the U.S. Dollar London Interbank Offered Rate ("LIBOR").  (Compl. ¶¶ 67-75.)

6.      LIBOR refers to a benchmark set of interest rates.  According to the Complaint, LIBOR is set by the British Bankers' Association ("BBA") based on daily survey responses from designated panel banks concerning the interest rates at which they believe they can borrow funds from other banks in the London interbank market.  Plaintiff alleges that at relevant times, defendants Bank of America, Bank of Tokyo Mitsubishi UFJ Ltd. ("Bank of Tokyo"), Barclays Bank PLC ("Barclays"), Citi, Coöperatieve Centrale Raiffeisen – Boerenleenbank B.A. ("Rabobank"), Credit Suisse Group AG ("Credit Suisse"), Deutsche Bank

3

AG ("Deutsche Bank"), HSBC Holdings PLC and HSBC Bank PLC (together, "HSBC"), JPMorgan Chase, Lloyds Banking Group PLC ("Lloyds"), HBOS PLC ("HBOS"), Royal Bank of Canada ("RBC"), The Norinchukin Bank ("Norinchukin"), the Royal Bank of Scotland Group PLC ("RBS"), UBS, and West LB (the "LIBOR Defendants") were members of the panel of banks that submitted responses to the BBA's daily LIBOR survey.  (Compl. ¶¶ 2-3, 58.)

7.     Plaintiff alleges that the LIBOR Defendants knowingly and deliberately reported rates to the BBA that were lower than their actual costs of borrowing.  Plaintiff alleges that this caused U.S. Dollar LIBOR reference rates to be set at artificially low levels, and reduced the amount of the interest rate payments NIFA received under the Transactions. (Compl. ¶¶ 4-7, 9, 11.)

8.     Plaintiff purports to assert claims for common law fraud and violation of Section 349 of the New York General Business Law against the LIBOR Defendants, and claims for breach of contract and unjust enrichment against the Counterparty Defendants.  (Compl. ¶¶ 77-104.)  Defendants dispute that they have any liability whatsoever to Plaintiff.

9.     Defendants' time to respond to the Summons and Complaint has not expired, and none of the Defendants has served or filed an answer.

10.     No motions or other proceedings in this Action are pending in the State Court.

11.     This Notice of Removal is timely because the Edge Act permits removal "at any time before the trial."  12 U.S.C. § 632.  This removal is also being effected within 30 days of Defendants receiving copies of the initial pleading as provided in 28 U.S.C. § 1446(b), and in any event the time period specified in that provision is subject to enlargement in cases where removal is based in part on 28 U.S.C. § 1330 (*see* 28 U.S.C. § 1441(d)).

12.    The action is removable to this Court because the Eastern District of New York embraces the place where the State Court action is pending.  *See* 28 U.S.C. § 1441(a), (d).

### REMOVAL BASED ON THE EDGE ACT

13.    The Edge Act establishes original jurisdiction in United States District Courts for civil litigation involving international or foreign banking activities or financial operations.  The Edge Act provides in relevant part:

> [A]ll suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits ….

12 U.S.C.  § 632.  The instant Action meets the requirements for federal jurisdiction set forth in this provision.

14.    This Action plainly is a "suit of a civil nature at common law or in equity" as required by the Edge Act.

15.    Three "corporations organized under the laws of the United States" are parties to this action because the Defendants include three federally chartered banks:  Bank of America, N.A., Citibank, N.A., and JPMorgan Chase Bank, N.A.

16.    The relevant statutory language thus creates jurisdiction and permits removal if this Action arises out of (a) "transactions involving international or foreign banking" or (b) "other international or foreign financial operations."  12 U.S.C. § 632.

5

17.     "A suit satisfies the jurisdictional prerequisites of Section 632 if *any part of it* arises out of transactions involving international or foreign banking." *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 214 (S.D.N.Y. 2005) (citation and internal quotation marks omitted).  Thus, federal courts "routinely" exercise jurisdiction pursuant to Section 632 "in cases based on state law causes of action and containing only an incidental connection to banking law," and even if "the international or foreign banking activity [is] not central to the case." *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 340-41 (S.D.N.Y. 1996) (collecting cases).

18.     Furthermore, even if a case does not involve a traditional banking activity, jurisdiction under the Edge Act may still be proper if the case involves "international financial operations." *Lemgruber*, 385 F. Supp. 2d at 215 n.13; *see also In re Lloyd's*, 928 F. Supp. 2d at 341 (same).

19.     The activities and operations upon which Plaintiff's claims are based, and that are at issue in this Action, have significant international and foreign dimensions.

- Plaintiff's claims are premised on allegations that the LIBOR Defendants, all of which are banks (including three federally chartered banks) or bank holding companies,[1] misreported their estimated borrowing costs for interbank loans in the London Eurodollar market to the BBA, which used those submissions to calculate U.S. Dollar LIBOR, an index of international financial benchmark rates published in London.

- The parties Plaintiff accuses of submitting false information to the BBA are mostly foreign banks.  The "LIBOR Defendants" named in the Complaint

---

[1]     As used hereafter in this Notice, the term "banks" is intended to include banks and bank holding companies.

include five banks that have their principal places of business in the United Kingdom (Barclays, HSBC, Lloyds, HBOS, and RBS), two in Japan (Bank of Tokyo and Norinchukin), two in Switzerland (Credit Suisse and UBS), two in Germany (Deutsche Bank and WestLB), and one each in the Netherlands (Rabobank) and Canada (RBC).   (Compl. ¶¶ 30-31, 36-42, 47-57.)

- Each Transaction was governed by a standard form of agreement for derivatives transactions that is published by ISDA (Compl. ¶ 96), which is the *International* Swaps and Derivatives Association.

- NIFA's counterparty on four of the Transactions was UBS AG, a Swiss banking corporation based in Basel and Zurich.  (Compl. ¶ 53.)

20.     The subject matter of this Action also clearly involves banking activity and financial operations as contemplated by the Edge Act.

21.     The allegedly wrongful conduct is alleged to have affected the setting of LIBOR.  As alleged in the Complaint (¶ 3), LIBOR is set by the BBA, which is an association of bankers in the United Kingdom.  As directed by the BBA, each panel bank submits its response to the BBA's LIBOR survey to an independent administrator on every day that is a banking day in London the rates at which the bank believes it could borrow unsecured funds, in a range of currencies and for a range of maturities, from other banks in the London interbank market, shortly before 11:00 a.m. London time.  For each currency and maturity, the administrator ranks the submissions from highest to lowest, discards the top and bottom quartile, averages the remaining submissions, and publishes the result as the daily LIBOR.  In addition, LIBOR is used as a reference index globally for various types of financial instruments, including floating rate notes, interest rate and other "swap" agreements, and other financial derivative products.

22.     The specific Transactions that reference LIBOR and upon which Plaintiff bases his claims also involve banking activities and financial operations.  The Transactions were interest rate swaps with various counterparties, four of which were with a foreign banking corporation (UBS).  Interest rate swaps involve allocations of financial risks associated with fluctuations in interest rates.  Furthermore, the Office of the Comptroller of the Currency, a federal agency that regulates national banks, has recognized that entering into interest rate swaps is a permissible banking activity for a national bank.  *See, e.g.,* OCC, "Activities Permissible for a National Bank, Cumulative" (April 2012), p. 53 ("National banks may … engage in a variety of derivative activities (including swaps, futures, forwards, and options) as a financial intermediary or to manage or reduce risks.").

## REMOVAL BASED ON 28 U.S.C. § 1330

23.     In addition, 28 U.S.C. § 1330 ("Section 1330") establishes original jurisdiction in United States District Courts for civil litigation against a corporation that is majority owned by a foreign state, as defined in 28 U.S.C. § 1603.  Section 1330 provides in relevant part:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a).

28 U.S.C. § 1330.  The instant Action meets the requirements for federal jurisdiction set forth in this provision.

24.     This Action falls under Section 1603(a) because this provision covers any corporation that meets the requirements set forth in Section 1603(b).  *See* 28 U.S.C. § 1603(a).

25.     To satisfy the requirements of Section 1603(b), and thus fall under Section 1603(a), a corporation must:

(1) be "a separate legal person, corporate or otherwise,"

(2) be an entity for which "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof," and

(3) be "neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country."

28 U.S.C. § 1603(b).

26.     At least one Defendant named in this action falls within this definition. Defendant Portigon is an entity incorporated under the laws of Germany, is approximately 69% owned by the state of North Rhine-Westphalia, one of the 16 states which comprise the Federal Republic of Germany, and is not a citizen of the United States nor created under the laws of any third country.

27.     Portigon is a German corporation, incorporated under the laws of Germany (Commercial Register: HR B 42975, Local Court Duesseldorf), with its head office located at Herzogstraße 15, 40217 Düsseldorf, Germany.[2]   North Rhine-Westphalia is a constituent state and political subdivision of the Federal Republic of Germany, a sovereign state.

28.     Pursuant to *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003), "direct ownership of a majority of shares by the foreign state satisfies the statutory requirement" of Section 1603.  This status is "determined at the time suit is filed."  *Id.* at 478.

29.     At the time the Action was filed, the state of North Rhine-Westphalia held a stake of 69.49% in Portigon.[3]

---

[2]     *See* http://www.portigon.com/cm/content/portigon/i/en/support-pages/footer-meta-menu/impressum.html.

[3]     *See* http://www.portigon.com/cm/content/portigon/i/en/ueber-portigon/konzerninformationen/unternehmensportrait/_jcr_content/marginalparsys/box/download/file.res/Eigent%C3%BCmerstruktur%201%20Sept%202012%20engl.pdf.

30.     Furthermore, where Section 1330 provides original jurisdiction, supplemental jurisdiction may extend to claims against other parties as to which there otherwise might be no federal subject matter jurisdiction.  *See, e.g., Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989) (Section 1330 "grants federal jurisdiction over entire cases where a foreign state is a party."); *see also Noonan v. Possfund Inv., Ltd.*, 89 Civ. 2903, 1994 WL 515440, at *2-3 (S.D.N.Y. Sept. 3, 1993) (finding jurisdiction under Section 1330 and denying remand).

31.     The relevant statutory language thus creates jurisdiction and permits removal of this Action as to all Defendants.

## OTHER PROCEDURAL REQUIREMENTS

32.     Promptly upon the filing of this Notice of Removal, a true copy of this Notice of Removal will be provided to all adverse parties pursuant to 28 U.S.C. § 1446(d). Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, Defendants will file with this Court a Certificate of Service of notice to the adverse parties of removal to federal court.

33.     Upon the filing of this Notice of Removal, Defendants will promptly file a Notification of Filing of Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of Nassau, in accordance with 28 U.S.C. § 1446(d).

34.     Consent to removal by all Defendants is not required under either the Edge Act or 28 U.S.C. § 1330.  *See* 12 U.S.C. § 632 (providing that "any defendant" may remove the suit); 28 U.S.C. § 1441(d).  Nevertheless, counsel for the undersigned Defendants have conferred with counsel for the other Defendants in this action (Bank of Tokyo, Barclays, Rabobank, Credit Suisse, Deutsche Bank, HSBC, Lloyds, HBOS, RBC, RBS, Norinchukin, UBS, Goldman Sachs, and Morgan Stanley), and all of those other Defendants have indicated

that they consent to the removal of this Action, subject to and without waiving any defenses and rights available to them.

35.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

36.    By filing this Notice of Removal, Defendants do not waive any defenses that may be available to any of them (including without limitation any defenses relating to service, process, and jurisdiction) and do not concede that the allegations in the Complaint state a valid claim under any applicable law.

37.    Defendants reserve the right to submit at an appropriate time factual support, evidence, and affidavits to support the basis for federal jurisdiction, should that become necessary.

## NOTICE REGARDING RELATED CASE

38.    This Action is related to a series of previously filed lawsuits that were consolidated by the Judicial Panel on Multidistrict Litigation and have been pending for more than a year in the United States District Court for the Southern District of New York before Judge Naomi Reice Buchwald.  *See In re: LIBOR-Based Financial Instruments Litigation*, MDL No. 2262.  Plaintiff's claims here – which allege that an improper suppression of U.S. Dollar LIBOR resulted in depressed interest payments under interest rate swaps – are substantially similar to claims based on the same factual allegations that have been asserted against the same defendants in the cases that are part of the MDL before Judge Buchwald.  For example, Plaintiff appears to be a member of the putative class described in at least one of the class action suits that

is part of the MDL.[4]   Defendants intend to request that this Action be transferred to Judge

Buchwald as a "tag along" case related to the existing MDL in the Southern District of New

York.[5]

* * *

WHEREFORE, the undersigned Defendants hereby remove this Action from the

Supreme Court of the State of New York, County of Nassau, to this honorable Court.

Dated:   New York, New York
December 21, 2012

---

[4]      In *Mayor and City Council of Baltimore v. Credit Suisse Group AG et al.*, Case No. 1:11-md-02262-NRB, the lead plaintiff – like the Plaintiff in this Action – is a municipality alleging that it entered into interest rate swaps with rates that were tied to U.S. Dollar LIBOR, and received artificially depressed interest payments.  (Consolidated Amended Complaint dated April 30, 2012, ¶¶ 12, 219.)  The municipality in that case seeks to represent "[a]ll persons or entities (other than Defendants and their employees, affiliates, parents and subsidiaries) that purchased in the United States, directly from a Defendant, a financial instrument that paid interest indexed to LIBOR … any time during the period August 2007 through May 2010 …." (*Id.* ¶ 34.)

[5]      *See* 28 U.S.C. § 1407; JPML Rule 7.1(a) ("Any party or counsel in actions previously transferred under Section 1407 shall promptly notify the Clerk of the Panel of any potential tag-along actions in which that party is also named or in which that counsel appears."); William B. Rubenstein, *Newburg on Class Actions*, § 6.45 ("Once an MDL is up and running, individual litigants (or parties representative of putative classes) may continue to file cases in federal courts throughout the country (or, alternatively, such cases may have simply eluded the initial transfer motion).  Section 1407's general grant of transfer authority enables the JPML to transfer these later cases to the existing MDL so long as they share one or more common questions of fact with the actions in the MDL.").

Robert F. Wise, Jr.
Arthur J. Burke
Paul S. Mishkin
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
robert.wise@davispolk.com
arthur.burke@davispolk.com
paul.mishkin@davispolk.com

*Attorneys for Defendants Bank of America
Corporation and Bank of America, N.A.*

Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 841-1000
aruffino@cov.com

Alan M. Wiseman
Thomas A. Isaacson
Jonathan Gimblett
1201 Pennsylvania Avenue N.W.
Washington, D.C. 20004
Tel: (202) 662-6000
awiseman@cov.com
tisaacson@cov.com

Michael R. Lazerwitz
Joon H. Kim
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
mlazerwitz@cgsh.com
jkim@cgsh.com

*Attorneys for Defendants Citibank, N.A. and Citigroup, Inc.*

Thomas C. Rice
Juan A. Arteaga
Joan E. Flaherty
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
trice@stblaw.com
jarteaga@stblaw.com
jflaherty@stblaw.com

*Attorneys for Defendants JPMorgan Chase & Co. and
JPMorgan Chase Bank, N.A.*

_____

Ethan E. Litwin
Morgan J. Feder
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
litwin@hugheshubbard.com
feder@hugheshubbard.com

*Attorneys for Defendant Portigon AG (formerly known as WestLB AG)*

**EXHIBIT A TO NOTICE OF REMOVAL**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------X
GEORGE MARAGOS, in his official capacity as the
COMPTROLLER OF THE COUNTY OF NASSAU,
acting on behalf of the COUNTY OF NASSAU,

Index No.: *12 - 014496*
Date Purchased: *11-27-12*

                                        Plaintiff,

                                                            Plaintiff designates Nassau
                                                            County as the place of trial

                          -against-

BANK OF AMERICA CORPORATION; BANK OF AMERICA,
N.A.; BANK OF TOKYO MITSUBISHI UFJ LTD.; BARCLAYS
BANK PLC; CITIGROUP, INC.; CITIBANK, N.A.;
COÖPERATIEVE CENTRALE RAIFFEISEN-
BOERENLEENBANK B.A.; CREDIT SUISSE GROUP AG;
DEUTSCHE BANK AG; HSBC HOLDINGS PLC; HSBC BANK
PLC; JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION; LLOYDS BANKING GROUP PLC;     **SUMMONS**
HBOS PLC; ROYAL BANK OF CANADA; THE NORINCHUKIN
BANK; THE ROYAL BANK OF SCOTLAND GROUP PLC; UBS
AG; WESTLB AG; and WESTDEUTSCHE
IMMOBILIENBANK AG,

                                LIBOR Defendants,     The basis of venue is
                                                      Principal Place of Business
                                                      of the Plaintiff
                          -and-

GOLDMAN SACHS MITSUI MARINE DERIVATIVE
PRODUCTS, L.P. and UBS AG, and MORGAN STANLEY
CAPITAL SERVICES INC.,

                          Counterparty Defendants,   Plaintiff is located at
                                                      242 Old Country Road
                                                      Mineola, NY 11501
                          -and-

NASSAU COUNTY INTERIM FINANCE AUTHORITY,

                                Nominal Defendant.

-----------------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorney within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     Roslyn, New York
           November 27, 2012

                                   LEVENTHAL, CURSIO, MULLANEY &
                                        SLINEY, LLP
                                   Attorneys for Plaintiff

                                   By: _____
                                   Steven G. Leventhal
                                   15 Remsen Avenue
                                   Roslyn, New York 11576
                                   (516) 484-5440

To:   Nassau County Interim Finance Authority
      170 Old Country Road, Suite 205
      Mineola, NY 11501

      Bank of America Corporation
      One Bryant Park
      115 West 42nd Street
      New York, NY 10036

      Bank of Tokyo-Mitsubishi UFJ Ltd.
      1251 Avenue of the Americas
      New York, NY 10020

      Barclays Bank PLC
      200 Park Avenue
      New York, NY 10166

      Citigroup, Inc.
      399 Park Avenue
      New York, NY 10043

Citigroup, N.A.
399 Park Avenue
New York, NY 10043

Coöperatieve CentraleRaiffeisen-Boerenleenbank B.A.
245 Park Avenue
New York, NY 10167

Credit Suisse Group AG
11 Madison Avenue
New York, NY 10010

Deutsche Bank AG
60 Wall Street
New York, NY 10005

HSBC Holdings PLC
452 Fifth Avenue
New York NY 10018

HSBC Bank PLC
452 Fifth Avenue
New York NY 10018

JPMorgan Chase & Co.
270 Park Avenue
New York, NY 10017

JPMorgan Chase Bank, National Association
270 Park Avenue
New York, NY 10017

Lloyds Banking Group PLC
1095 Avenue of the Americas, 34th Floor
New York, NY 10036

HBOS PLC
1095 Avenue of the Americas, 34th Floor
New York, NY 10036

Royal Bank of Canada
12 East 49th Street, 35th Floor
New York, NY 10017

The Norinchukin Bank
245 Park Avenue, 21st Floor
New York, NY 10167

The Royal Bank of Scotland Group PLC
101 Park Avenue, 10th Floor
New York, NY 10178

UBS AG
1285 Avenue of the Americas
New York, NY 10019

WestLB AG
7 World Trade Center
250 Greenwich Street
New York, NY 10007

Westdeutsche Immobilien Bank AG
1211 Avenue of the Americas
New York, NY 10036

Goldman Sachs Mitsui Marine Derivative Products, L.P.
85 Broad Street
New York, NY 10004

Morgan Stanley Capital Services Inc.
1585 Broadway
New York, NY 10036

Bank of America, N.A.
One Bryant Park
115 West 42nd Street
New York, NY 10036

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-----------------------------------------------------------------------X
GEORGE MARAGOS, in his official capacity as the
COMPTROLLER OF THE COUNTY OF NASSAU,
acting on behalf of the COUNTY OF NASSAU,

       Plaintiff,

     -against-

BANK OF AMERICA CORPORATION; BANK OF AMERICA,
N.A.; BANK OF TOKYO MITSUBISHI UFJ LTD.; BARCLAYS
BANK PLC; CITIGROUP, INC.; CITIBANK, N.A.;
COÖPERATIEVE CENTRALE RAIFFEISEN -
BOERENLEENBANK B.A.; CREDIT SUISSE GROUP AG;
DEUTSCHE BANK AG; HSBC HOLDINGS PLC; HSBC BANK
PLC; JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION; LLOYDS BANKING GROUP PLC;
HBOS PLC; ROYAL BANK OF CANADA; THE NORINCHUKIN
BANK; THE ROYAL BANK OF SCOTLAND GROUP PLC; UBS
AG; WESTLB AG; and WESTDEUTSCHE IMMOBILIENBANK
AG,

     LIBOR Defendants,

    -and-

GOLDMAN SACHS MITSUI MARINE DERIVATIVE
PRODUCTS, L.P., UBS AG, and MORGAN STANLEY
CAPITAL SERVICES INC.,

     Counterparty Defendants,

    -and-

NASSAU COUNTY INTERIM FINANCE AUTHORITY,

     Nominal Defendant.
-----------------------------------------------------------------------X

Index No.: *12 -014496*
Date Purchased: *11 -27-12*

**VERIFIED
COMPLAINT**

   Plaintiff GEORGE MARAGOS, in his official capacity as the Comptroller of the County

of Nassau (the "County"), complaining of the Defendants, by his attorneys, Leventhal, Cursio,

Mullaney & Sliney, LLP, as Special Counsel to the Nassau County Attorney's Office, respectfully alleges as follows:

## SUMMARY OF THE ACTION

1.      This case arises from manipulation of the London Interbank Offered Rate ("LIBOR") by various prominent financial institutions.

2.      LIBOR is a benchmark set of interest rates that includes U.S. Dollar LIBOR ("USD LIBOR"), which are used to price trillions of dollars worth of financial instruments worldwide.

3.      Beginning at least as early as 2007, and continuing through 2011, the LIBOR Defendants made daily reports to the British Bankers' Association ("BBA") of the interest rates at which they claimed they could have borrowed funds from other financial institutions.

4.      The LIBOR Defendants knowingly and deliberately reported rates that were lower than their actual costs of borrowing.

5.      These false rates were reported in order to bolster the LIBOR Defendants' apparent economic strength, and lower the payments that they owed to investors and counterparties on instruments whose payments were tied to LIBOR.

6.      The BBA relied on the false information that the LIBOR Defendants provided to set the LIBOR rates, including USD LIBOR.

7.      The LIBOR Defendants caused LIBOR and USD LIBOR to be set at artificially low rates.

8.      The Nassau County Interim Finance Authority ("NIFA") entered into various interest rate swap transactions with the Counterparty Defendants which were tied to USD LIBOR.

9.     Because the LIBOR Defendants reported false USD LIBOR quotes, the Counterparty Defendants paid lower amounts to NIFA than were required under the interest rate swap transactions which they entered into with NIFA.

10.     The County was the intended third party beneficiary of the contracts between the Counterparty Defendants and NIFA.

11.     By reporting false USD LIBOR quotes, the LIBOR Defendants deprived investors and counterparties, including the Plaintiff herein, of their rightful rates of return.

12.     The LIBOR Defendants reaped for themselves millions of dollars in inflated gains, over a period of years.

13.     It has been widely reported in world financial media that these activities by the LIBOR Defendants were and are the subject of government investigations within the United States and abroad.

14.     On or about June 26, 2012, Barclays Bank PLC entered into an agreement with the U. S. Department of Justice ("DOJ"), the Commodity Futures Trading Commission and the Financial Services Authority of Britain, by which it agreed to pay substantial fines and admitted that it "often submitted inaccurate Dollar LIBORs that under-reported its perception of its borrowing costs and its assessment of where its Dollar LIBOR submission should have been."

15.     Upon information and belief, in or about July, 2011, UBS AG received a grant of conditional leniency from the DOJ under the Antitrust Criminal Penalties Enhancement and Reform Act and the DOJ's Corporate Leniency Policy in exchange for its cooperation with the DOJ's investigation into the manipulation of the LIBOR Rate.

16.     Upon information and belief, the DOJ only grants leniency to corporations that report actual illegal activity.

17.     Upon information and belief, several former traders at UBS AG were offered a plea bargain by federal prosecutors in exchange for cooperation in the continuing LIBOR investigation.

18.     Upon information and belief, other LIBOR Defendants are targets of government investigations concerning the misconduct alleged in this Complaint.

19.     The County is entitled to recover money damages as a result of the LIBOR Defendants' reporting of falsely understated USD LIBOR rates.

20.     The County is entitled to recover money damages as a result of the Counterparty Defendants' underpayments on the swap transactions alleged herein.

## PARTIES, JURISDICTION AND VENUE

21.     Plaintiff George Maragos is Comptroller of the County of Nassau, maintains his office at 242 Old Country Road, Mineola, NY 11501, and brings this action in his official capacity on behalf of the County of Nassau.

22.     Defendant Nassau County Interim Finance Authority ("NIFA") is a public benefit corporation created by the N.Y. Public Authorities Law §3652, and maintains an office at 170 Old Country Road, Suite 205, Mineola, NY 11501.

23.     NIFA is empowered to, and does, collect certain revenues owed to the County, pay certain obligations of the County, and remit the balance, if any, to the County.

24.     As NIFA entered into the swap transactions referred to herein, NIFA is a necessary party to this action.

25.     NIFA is joined as a nominal defendant, and should be re-aligned as a co-plaintiff.

26.     Defendant Bank of America Corporation is a Delaware corporation headquartered

in Charlotte, North Carolina, doing business in New York at One Bryant Park, 115 West 42nd

Street, New York, NY 10036.

27.     Defendant Bank of America, N.A. is a federally chartered national banking

association headquartered in Charlotte, North Carolina.

28.     Bank of America, N.A. is an indirect, wholly-owned subsidiary of Defendant

Bank of America Corporation doing business in New York at One Bryant Park, 115 West 42nd

Street, New York, NY 10036.

29.     Defendants Bank of America Corporation and Bank of America, N.A. are

referenced individually and collectively in this Complaint as "Bank of America."

30.     Defendant Bank of Tokyo-Mitsubishi UFJ Ltd. ("Bank of Tokyo") is a Japanese

financial services company headquartered in Tokyo, Japan, doing business in New York at 1251

Avenue of the Americas, New York, NY 10020.

31.     Defendant Barclays Bank PLC ("Barclays") is a British financial services

business organized as a public limited company and headquartered in London, England, doing

business in New York at 200 Park Avenue, New York, NY 10166.

32.     Defendant Citigroup, Inc. is a Delaware corporation headquartered at 399 Park

Avenue, New York, NY 10043.

33.     Defendant Citibank, N.A. is a federally-chartered national banking association

headquartered at 399 Park Avenue, New York, NY 10043.

34.     Citibank, N.A. is a wholly-owned subsidiary of Defendant Citigroup, Inc.

35.     Defendants Citigroup, Inc. and Citibank, N.A. are referenced individually and

collectively in this Complaint as "Citibank."

36.     Defendant Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A. ("Rabobank")

is a financial services provider headquartered in Utrecht, the Netherlands, doing business in New York at 245 Park Avenue, New York, NY 10167.

37.     Defendant Credit Suisse Group AG ("Credit Suisse") is a Swiss company headquartered in Zurich, Switzerland, doing business in New York at 11 Madison Avenue, New York, NY 10010.

38.     Defendant Deutsche Bank AG ("Deutsche Bank") is a German financial services company headquartered in Frankfurt, Germany, doing business in New York at 60 Wall Street, New York, New York 10005.

39.     Defendant HSBC Holdings PLC is a United Kingdom public limited company headquartered in London, England, which does business through its affiliates and subsidiaries in the State of New York at 452 Fifth Avenue, New York New York 10018.

40.     Defendant HSBC Bank PLC is a United Kingdom public limited company headquartered in London, England, doing business in New York at 452 Fifth Avenue, New York New York 10018.

41.     HSBC Bank PLC is a wholly-owned subsidiary of Defendant HSBC Holdings PLC.

42.     Defendants HSBC Holdings PLC and HSBC Bank PLC are referenced collectively in this Complaint as "HSBC."

43.     Defendant JPMorgan Chase & Co. is a Delaware corporation headquartered at 270 Park Avenue, New York, New York 10017.

44.     Defendant JPMorgan Chase Bank, N.A. is a federally chartered national banking association headquartered in New York at 270 Park Avenue, New York, New York 10017.

45.     JPMorgan Chase Bank is a wholly-owned subsidiary of Defendant JPMorgan Chase & Co.

46.     Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. are referenced collectively in this Complaint as "JPMorgan Chase."

47.     Defendant Lloyds Banking Group plc ("Lloyds") is a United Kingdom public limited company headquartered in London, England, doing business in New York at 1095 Avenue of the Americas, 34th Floor, New York, New York 10036.

48.     Defendant Lloyds was formed in 2009 when HBOS plc ("HBOS") acquired Lloyds TSB Bank plc.

49.     HBOS is a United Kingdom banking and insurance company headquartered in Edinburgh, Scotland, which does business through its affiliates and subsidiaries in the State of New York at 1095 Avenue of the Americas, 34th Floor, New York, New York 10036.

50.     Defendant Royal Bank of Canada ("RBC") is a Canadian corporation headquartered in Toronto, Canada, doing business in New York at 12 East 49th Street, 35th Floor, New York, New York 10017.

51.     Defendant The Norinchukin Bank ("Norinchukin") is a Japanese cooperative bank headquartered in Tokyo, Japan, doing business in New York at 245 Park Avenue, 21st Floor, New York, New York 10167.

52.     Defendant The Royal Bank of Scotland Group plc ("RBS") is a United Kingdom public limited company headquartered in Edinburgh, Scotland, doing business in New York at 101 Park Avenue, 10th Floor, New York, New York 10178.

53.     Defendant UBS AG is a Swiss corporation based in Basel and Zurich,

Switzerland, doing business in New York at 1285 Avenue of the Americas, New York, New York 10019.

54.     Defendant WestLB AG is a German joint stock company headquartered in Dusseldorf, Germany, doing business in New York at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

55.     Defendant Westdeutsche ImmobilienBank AG is a German company headquartered in Mainz, Germany, doing business in New York at 1211 Avenue of the Americas, New York, NY 10036.

56.     Westdeutsche ImmobilienBank AG is a wholly-owned subsidiary of WestLB AG.

57.     Defendants WestLB AG and Westdeutsche ImmobilienBank AG are referenced collectively in this Complaint as "WestLB."

58.     Defendants Bank of America, Bank of Tokyo, Barclays, Citibank, Rabobank, Credit Suisse, Deutsche Bank, HSBC, JPMorgan Chase, Lloyds, HBOS, RBC, Norinchukin, RBS, UBS AG, and WestLB (collectively, the "LIBOR Defendants") were members of the BBA's USD LIBOR Contributing Panel.

59.     Defendant Goldman Sachs Mitsui Marine Derivative Products, L.P. ("Goldman Sachs") is a limited partnership doing business in New York at 85 Broad Street, New York, NY 10004.

60.     Goldman Sachs is a counterparty to four of the swap transactions alleged herein, and it is sued herein as a Counterparty Defendant.

61.     LIBOR Defendant UBS AG is a counterparty to four of the swap transactions alleged herein, and it is also sued herein as a Counterparty Defendant.

62.     Defendant Morgan Stanley Capital Services Inc. is a Delaware corporation doing business at 1585 Broadway, New York, New York 10036.

63.     Morgan Stanley Capital Services Inc. is a counterparty to one of the swap transactions alleged herein, and it is sued herein as a Counterparty Defendant.

64.     Each of the Defendants is subject to personal jurisdiction in this Court by virtue of its transaction of business in the State of New York and/or its written consent to jurisdiction in New York.

65.     Plaintiff designates Nassau County as the venue for this action, based on the location of Plaintiff's office within the County.

66.     The County of Nassau is a municipal corporation which transacts business in Nassau County and its principal place of business is located in Nassau County

## TRANSACTIONS

67.     NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004B, between NIFA and Goldman Sachs, dated April 1, 2004, running from April 8, 2004 until November 15, 2024, in which NIFA pays a fixed rate to Goldman Sachs and receives a variable rate based on USD LIBOR, on a notional amount which is currently $72,500,000.

68.     NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004C, between NIFA and Goldman Sachs, dated April 1, 2004, running from April 8, 2004 until November 15, 2024, in which NIFA pays a fixed rate to Goldman Sachs and receives a variable rate based on USD LIBOR, on a notional amount which is currently $72,500,000.

69.     NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004D, between NIFA and Goldman Sachs, dated April 1, 2004, running from April 8,

2004 until November 15, 2016, in which NIFA pays a fixed rate to Goldman Sachs and receives a variable rate based on USD LIBOR, on a notional amount which is currently $80,000,000.

70.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004E, between NIFA and UBS AG, dated 31 March, 2004, running from April 8, 2004 until November 15, 2024, in which NIFA pays a fixed rate to UBS AG and receives a variable rate based on USD LIBOR, on a notional amount which is currently $72,500,000.

71.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004F, between NIFA and UBS AG, dated 31 March, 2004, running from April 8, 2004 until November 15, 2024, in which NIFA pays a fixed rate to UBS AG and receives a variable rate based on USD LIBOR, on a notional amount which is currently $72,500,000.

72.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004G, between NIFA and UBS AG, dated 31 March, 2004, running from April 8, 2004 until November 15, 2016, in which NIFA pays a fixed rate to UBS AG and receives a variable rate based on USD LIBOR, on a notional amount which is currently $80,000,000.

73.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004I, between NIFA and Goldman Sachs, dated November 17, 2004, running from December 9, 2004 until November 15, 2025, in which NIFA pays a fixed rate to Goldman Sachs and receives a variable rate based on USD LIBOR, on a notional amount which is currently $50,000,000.

74.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap, Series 2004J, between NIFA and UBS AG, dated November 19, 2004, running from December 9, 2004 until November 15, 2025, in which NIFA pays a fixed rate to UBS AG and receives a variable rate based on USD LIBOR, on a notional amount which is currently $50,000,000.

75.    NIFA, acting for the benefit of the Plaintiff, entered into an interest rate swap,

Series 2004K, between NIFA and Morgan Stanley Capital Services Inc., dated November 16,

2004, running from December 9, 2004 until November 15, 2025, in which NIFA pays a fixed

rate to Morgan Stanley Capital Services Inc. and receives a variable rate based on USD LIBOR,

on a notional amount which is currently $50,000,000.

76.    Because the County was the intended third party beneficiary of the foregoing

swap agreements, the County was damaged to the extent that NIFA was deprived of payments

properly due to it under the above swap transactions.

### FIRST CAUSE OF ACTION
### FRAUD
### (Against All LIBOR Defendants)

77.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1

through 76 above as if fully set forth herein.

78.    The LIBOR Defendants each knowingly submitted materially false USD LIBOR

quotes to the BBA, knowing that those quotes would become part of the USD LIBOR fix

calculated by the BBA and widely disseminated to the financial services industry.

79.    The LIBOR Defendants' false USD LIBOR submissions succeeded in artificially

depressing the reported USD LIBOR fix.

80.    The LIBOR Defendants each had actual knowledge of the falsehood of their USD

LIBOR quotes, because each knew that their USD LIBOR quotes were less than the actual rates

at which they could borrow funds of a reasonable size in the interbank market, and were less than

the rates at which the LIBOR Defendants actually borrowed funds in the interbank market.

81.    In the alternative, the LIBOR Defendants recklessly disregarded the falsity of

their USD LIBOR quotes.

82.     As participants in the financial services industry, the LIBOR Defendants each had actual knowledge of the commonly-known uses of USD LIBOR, including its use to set interest rates in investment and swap transactions with themselves and other financial institutions.

83.     The LIBOR Defendants intended to induce reliance upon their misrepresentations.

84.     The LIBOR Defendants submitted false USD LIBOR quotes to the BBA with the intent that they would be included in the calculation of the BBA's daily USD LIBOR fix disseminated to financial markets.

85.     The County and NIFA detrimentally relied upon the LIBOR Defendants' misrepresentations, by accepting swap payments that were based upon the fraudulently suppressed USD LIBOR rates and therefore collecting less than they would have received had the LIBOR Defendants submitted honest USD LIBOR quotes, and not caused USD LIBOR to be artificially suppressed.

86.     The reliance by the County and NIFA upon the integrity of Defendants' USD LIBOR quotes was both justifiable and reasonable, in that it was consistent with the normal practices within the financial services industry.

87.     The County and NIFA were injured as a result of the LIBOR Defendants' actions because they were unable to collect the full swap payments to which they were entitled, and would have received but for the LIBOR Defendants' fraud.

88.     The injuries sustained by the County were proximately caused by the LIBOR Defendants' submissions of false USD LIBOR quotes to the BBA.

89.     Plaintiff is entitled to recover the actual damages caused by the fraud of the LIBOR Defendants, in an amount to be determined at trial, in excess of $7,245,000.

90.    Plaintiff should also recover punitive damages in an amount in excess of $21,735,000.

## SECOND CAUSE OF ACTION
## VIOLATION OF N.Y. GENERAL BUSINESS LAW §349
### (Against All LIBOR Defendants)

91.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 90 above as if fully set forth herein.

92.    New York General Business Law §349 declares unlawful any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state, and allows any person who has been injured by reason of any violation of that statute to bring an action to recover his actual damages.

93.    The actions of the LIBOR Defendants in furnishing false information regarding their borrowing costs, and thereby falsely depressing the USD LIBOR rate payable to NIFA for the benefit of the County under the swap transactions, constitutes a deceptive act in the conduct of business or the furnishing of a service in this state, within the meaning of New York General Business Law §349.

94.    Plaintiff is entitled to recover its actual damages caused by the violation of New York General Business Law §349 by the LIBOR Defendants, in an amount to be determined at trial, in excess of $7,245,000, plus attorneys' fees.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against the Counterparty Defendants)

95.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 94 above, as if fully set forth herein.

96.     The Counterparty Defendants each entered into an ISDA Master Agreement, and separately entered into Confirmations for each of the foregoing swap transactions, with NIFA.

97.     The County was the intended third party beneficiary to the swap transactions between the Counterparty Defendants and NIFA.

98.     Pursuant to the terms of the Confirmation for each of the swap transactions between NIFA and the Counterparty Defendants, NIFA periodically paid, and continues to pay, a fixed rate of interest on a nominal amount to the Counterparty Defendants, and the Counterparty Defendants paid, and continue to pay, a variable rate of interest based on USD LIBOR on the same nominal amount to NIFA.

99.     Because of the suppression of USD LIBOR rates by the LIBOR Defendants, the payments made by the Counterparty Defendants to NIFA have been, and continue to be, less than they would have been in the absence of the wrongful suppression of USD LIBOR, in violation of the swap contracts between the Counterparty Defendants and NIFA.

100.    Plaintiff is entitled to recover the damages caused by the Counterparty Defendants' breach of the swap contracts, in an amount to be determined at trial, in excess of $7,245,000.

## FOURTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against the Counterparty Defendants)

101.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 100 above, as if fully set forth herein.

102.    Because of the suppression of USD LIBOR rates by the LIBOR Defendants, the payments made by the Counterparty Defendants to NIFA have been, and continue to be, less than they should have been in the absence of the wrongful suppression of USD LIBOR, and the Counterparty Defendants have been unjustly enriched at the expense of the County.

103.    It would be inequitable for the Counterparty Defendants to be allowed to retain the additional amounts which would have been paid to NIFA, but for the unlawful suppression of USD LIBOR.

104.    Each of the Counterparty Defendants should pay restitution to the County of its own respective unjust enrichment, in the aggregate amount to be determined at trial, in excess of $7,245,000.

WHEREFORE, Plaintiff prays for a judgment of this Court on the first, second, third and fourth causes of action, for:

(a) damages against the Libor Defendants and the Counterparty Defendants, in an amount to be determined, in excess of $7,245,000 with interest from the time each payment was due;

(b) punitive damages against the LIBOR Defendants in an amount to be determined, in excess of $21,735,000;

(c) attorneys' fees and the costs of this action, and

(d) such other and further relief as this Court deems just and proper.

Dated: Roslyn, New York
        November 27, 2012

                          LEVENTHAL, CURSIO, MULLANEY,
                              & SLINEY, LLP
                          Attorneys for Plaintiff


                          By:  _Steven G. Leventhal_
                          Steven G. Leventhal, Esq.
                          15 Remsen Avenue
                          Roslyn, New York 11576
                          (516) 484-5440

STATE OF NEW YORK )
                         )ss.:
COUNTY OF NASSAU )

         STEVEN G. LEVENTHAL, an attorney admitted to practice in the State of New York,

pursuant to CPLR §3020(d)(2), affirms the following to be true under the penalties of perjury:

that he is a member of the firm of Leventhal, Cursio, Mullaney & Sliney, LLP, Special Counsel

to the Nassau County Attorney's Office, that he is acquainted with the facts of this case, that he

has read the foregoing Verified Complaint and knows the contents thereof, and the same is true

to his own knowledge, except as to the matters therein stated to be alleged on information and

belief, and as to those matters he believes them to be true. The grounds for his belief are the

records maintained by the plaintiff.

Dated: Roslyn, New York
        November 27, 2012


                                         _____
                                         STEVEN G. LEVENTHAL